IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SUPERIOR FUELS, INC.,
*an Illinois Corporation*,

        Plaintiff/Counter-Defendant,

vs.

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

        Defendant/Counter-Plaintiff.

Case No. 14-cv-1420-SMY-PMF

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Nationwide Agribusiness Insurance Company's ("Nationwide") Motion for Summary Judgment on its Counterclaim for Declaratory Judgment and on Plaintiff's Amended Complaint for Declaratory Judgment (Doc. 59). Plaintiff Superior Fuels, Inc. ("Superior") filed a Memorandum in Opposition (Doc. 64). For the reasons that follow, Defendant's motion is **GRANTED**.

## BACKGROUND

Defendant issued an insurance policy providing various types of coverage to Plaintiff including property, general liability and a liability umbrella among others. Doc. 20, p. 2. During the course of coverage in 2010 and 2011, Plaintiff purchased biodiesel fuel from e-Biofuels, LLC—a subsidiary of Imperial Petroleum. *Id* at p. 4. The fuel was purported to be B100 fuel with Renewable Identification Numbers ("RINs"). [1]

Plaintiff sold the biofuel and attached RINs to its customers under the presumption that the RINs were valid. Doc. 59, p. 2-7. However, on or about December 18, 2013, the Environmental Protection Agency ("EPA") deemed a series of RINs attached to the purchased

---

[1] An overview of RINs can be found on the EPA's website at https://www.epa.gov/renewable-fuel-standard-program/renewable-identification-numbers-rins-under-renewable-fuel-standard.

biofuel invalid and/or fraudulent. *Id.* E-Biofuels filed for bankruptcy in 2012. *Id.* Beginning in January 2014, Plaintiff began receiving claims from its customers for compensation for the invalidated RINs. *Id.* Plaintiff advised Defendant of the claims and requested that it provide a defense for the resulting litigation. Doc. 20, p. 5. Defendant refused to defend Plaintiff, and Plaintiff filed this declaratory judgment action.

Defendant now seeks a summary finding from the Court that it owes no duty to defend or indemnify Plaintiff with respect to the sale of the invalidated RINs under any of the policies issued by Defendant. In response Plaintiff argues that, pursuant to established Illinois law, an insurer must defend unless the allegations clearly demonstrate that the claim is beyond policy coverage.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In Illinois, an insurer may not refuse to defend "unless it is *clear* from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Emp'r. Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999) (quoting *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.,* 578 N.E.2d 926, 930 (Ill. 1991)). When the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend even if the allegations are groundless. *Emp'r. Ins. of Wausau*, 708 N.E.2d at 1135.

When determining whether an insurance provider has a duty to defend, a court should apply an "eight corners rule." *Farmers Auto. Ins. Ass'n v. Country Mut. Ins. Co.*, 722 N.E.2d 1228, 1232 (Ill. 2000). The four corners of the underlying complaint are compared with the four corners of the insurance contract, and the court must determine whether the facts alleged in the underlying complaint fall within, or potentially within, the insurance policy's coverage. *Id.* "The underlying complaint and the policy must be construed in favor of the insured, with all doubts resolved in the insured's favor." *Emp'r. Ins. Of Wausau*, 708 N.E.2d at 1135.

The rule of construction that policy terms are liberally construed in favor of coverage only comes into play when the policy is ambiguous. *Hobbs v. Hartford Ins.*, 823 N.E.2d 561,564 (Ill. 2005). Whether an ambiguity exists depends on whether the policy language is subject to more than one reasonable interpretation. *Id.* When a policy includes a section with definitions, a court should enforce the definitions as stated in the policy. *Farmers Auto. Ins. Ass'n*, 722 N.E.2d at 1232.

Here, Plaintiff emphasizes the "Fraud and Deceit" section of the Commercial Output Program Property policy. This section, found at Paragraph 5 of the "Covered Extensions" section of the Commercial Property policy, states:

> "We" pay up to $5,000 for **"theft" of covered property** when "you," "your" agents, customers, or consignees are **fraudulently induced** to part with the covered property:
> a.  to persons who falsely represent themselves as the proper persons to receive the property; or
> b.  **by the acceptance of fraudulent bills of lading** or shipping receipts.

Amended Complaint, Doc. 20, p. 18 (emphasis added). Defendant argues that RINs do not constitute "covered property" and, even if they did, the fraud and deceit coverage does not apply. Plaintiff does not directly address Defendant's argument as to whether RINs are "covered property," but rather responds that it "received literally thousands of fraudulent bills of lading" that were fraudulent and deceitful because they did not contain valid RINs as represented by E-Biofuels and Imperial Petroleum (Doc. 64, p. 2).

The "Property Covered" by the Commercial Property policy is set forth in three sections: Building Property, Business Personal Property and Property Not Covered. Doc. 20, pp. 14-17. There is no reference to RINs in any section. However, in Paragraph 11 of the "Property Not Covered" section, the policy states, "[e]xcept as provided elswhere [sic] in this policy, 'we' do not cover 'money,' 'securities,' accounts, bills, and the cost to reproduce, replace, or restore 'valuable papers' and lost information." Doc. 20, p. 17. "Securities" are defined in the policy as:

> …negotiable and nonnegotiable instruments or contracts representing either 'money' or other property. This includes, but is not limited to, stock certificates; tokens, tickets, revenue or stamps (whether represented by

4

> actual stamps or unused value in a meter) in current use; and evidences of debt used in connection with charge, credit, or debit cards that are not issued by 'you,' but does not include 'money.'

Doc. 20, p. 13.

Defendant asserts that, because RINs are representative of a value that fluctuates and can be traded on an exchange but have no intrinsic value themselves, they are similar to a stock certificate and fall within the exclusion at Paragraph 11. Plaintiff does not dispute this argument and instead points to the coverage for "Fraud and Deceit." The "Fraud and Deceit" section, however, is specifically limited to theft of *covered property* when the policyholder is fraudulently induced to part with the covered property. If RINs are not covered property, the Fraud and Deceit coverage is clearly inapplicable.

The United States Environmental Protection Agency describes RINs as "the 'currency' of the [Renewable Fuel Standard] program." EPA, https://www.epa.gov/renewable-fuel-standard-program/renewable-identification-numbers-rins-under-renewable-fuel-standard (last visited Jun. 22, 2016). RINs may be bought/sold/traded either separately or with the batch of fuel to which they were assigned. *Id.* Fuel producers generate the RIN, and market participants trade the RINs. *Id.* RIN market participants buy/sell/trade RINs by entering a transaction record in an EPA transaction system, which is then checked by the EPA before the RINs are transferred between accounts. *Id.*

Because they represent intangible property described by the EPA as "currency," the Court finds that RINs are not "covered property" under the Commercial Property policy. Rather, they fall within the definition of "securities." The "Covered Property" section includes only Building Property and Business Personal Property, with clear exclusions for non-tangible

5

Case 3:14-cv-01420-SMY-PMF Document 72 Filed 08/16/16 Page 6 of 6 Page ID #2169

securities.  Therefore, the allegations of the Amended Complaint clearly show that the claims are beyond coverage provided by the Commercial Property policy.  As such, Defendant had no duty to defend under the Commercial Output Program Property policy.

The analysis does not end there, however, because Plaintiff also holds Commercial General Liability and Commercial Liability Umbrella policies. The General Liability policy obligates Defendant to pay damages "because of 'bodily injury' or 'property damage' to which this insurance applies."  Doc. 20, p. 40.  "Property damage" under this policy excludes intangible property and therefore would not apply to RINs (see analysis above).  Doc. 20, p. 54.  The Liability Umbrella policy likewise obligates Defendant "to defend the insured against any 'suit' seeking damages for such 'bodily injury' or 'property damage' when the 'underlying insurance' does not provide coverage…."  Doc. 20, p. 56.  Again, "property damage" under this policy excludes intangible property and therefore would not apply to RINs.

The claims Plaintiff faces arising from the purchase of invalidated RINs are simply not covered by the policies issued by Defendant.  The lack of coverage is apparent from the eight corners of the Amended Complaint and the insurance policies.  Accordingly, Defendant's motion for summary judgment is **GRANTED** in its entirety. Nationwide Agribusiness Insurance Company had no duty to defend Superior Fuels and has no obligation to pay attorneys' fees incurred by Superior Fuels in its defense of litigation regarding invalidated RINs.

**IT IS SO ORDERED.**

**DATE: August 16, 2016**

s/  *Staci M. Yandle*
**STACI M. YANDLE**
**DISTRICT JUDGE**

6